UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DARRYL GAYDEN, | ) |
|---|---|
| Petitioner, | ) |
| | ) No. 3:10 CV 431 |
| v. | ) |
| SUPERINTENDENT, | ) |
| Respondent. | ) |

## OPINION and ORDER

Darryl Gayden, a *pro se* prisoner, is serving a 50-year sentence for attempted murder. *State v. Gayden,* 27D02-0010-CF-65. He filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE # 1.) The respondent argues that the petition is untimely or, alternatively, that the claims fail on the merits. (DE # 15.)

### I. FACTS

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Gayden's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals summarized the facts underlying Gayden's offense as follows:

> Gayden and Gretchen White became romantically involved in January 2000. Gayden and White lived together at the Eden House in Marion, Indiana. On October 6, 2000, White was staying at Regina Brewer's house because she and Gayden had been in a fight. That night, Gayden came to Brewer's house to borrow money from White. White and Gayden got into Brewer's car and White drove Gayden to the Eden House. When they arrived at the Eden House, Gayden refused to get out of the car. They began arguing, and White told Gayden she did not want to be with him anymore and that he needed to get out of the car. Gayden said, "[B]itch, I'm gonna kill ya." White told Gayden that she was going to her son's house and that Gayden could not

come because her son was tired of the arguing and fighting. At that, Gayden pulled out a knife and started stabbing White. White, in an attempt to calm Gayden down, told him that he could come with her to her son's house. Gayden told White to start driving, but when she began to drive, Gayden began stabbing her again. After White had driving approximately one block, Gayden told her that he wanted to drive. Gayden and White switched seats without exiting the car, and Gayden began to drive. Gayden who was "enraged" and in an "angry mad rage" continued stabbing White. He called her a "two dollar whore" and a "bitch" and told her that he was going to kill her. White saw a police car, and, as Gayden turned a corner, she opened the car door and tried to jump out. Gayden grabbed her and held her partially inside the car. When White was finally able to jump out of the car, she dislocated her shoulder. When the police officer approached White, Gayden was on top of her, and he was stabbing her. The officer told Gayden to drop his knife, and, after three demands, Gayden finally dropped the knife and laid it on the pavement. Gayden then turned toward White and said, "[B]itch, that's why I stabbed you in your eye."

White suffered twenty-one stab wounds or lacerations to her head, chest, abdomen, back, and both wrists . . . .

The State charged Gayden with attempted murder as a class A felony. Gayden was appointed a public defender who filed a motion for a competency evaluation. The trial court appointed doctors to evaluate Gayden and file reports of their findings with the trial court. After a hearing, the trial court found that Gayden was not competent to stand trial. Gayden was ordered confined to Logansport State Hospital until he was found to have attained the ability to understand the proceedings and assist in the preparation of his defense. Approximately seven months later, the trial court issued an order finding that Gayden had been determined to be competent and should be returned for trial.

*Gayden v. State*, No.27A02-0309-CR-827 (Ind. Ct. App. Feb. 10, 2004), slip op. at 2-4 (internal citations omitted). Gayden thereafter waived his right to a jury trial, and a trial proceeded before the court. *Id.* at 4. The court found Gayden guilty as charged and sentenced him to 50 years in prison. *Id.* Gayden appealed, arguing that there was insufficient evidence of his intent to commit murder and that the trial court abused its

discretion in imposing his sentence. *Id.* at 2. On February 10, 2004, the appellate court affirmed Gayden's conviction and sentence in all respects. *Id.* at 4-11. Gayden did not file a petition to transfer in the Indiana Supreme Court. (*See* DE # 14-2.)

On March 17, 2005, Gayden filed a petition for post-conviction relief claiming ineffective assistance of trial counsel on various grounds. (DE #14-1 at 9; DE # 14-5 at 41.) He also raised free-standing claims that his jury trial waiver was invalid and that his presentence jail time credit had been miscalculated. (DE # 14-5 at 41.) Following an evidentiary hearing, at which Gayden was represented by appointed counsel, the trial court denied the petition. (DE # 14-1 at 11.) Gayden appealed, arguing ineffective assistance of trial counsel on various grounds, including that counsel failed to properly advise him in connection with his jury trial waiver, committed various errors at trial, and miscalculated his presentence jail time credits. *Gayden v. State*, No. 27A02-0910-PC-947 (Ind. Ct. App. May 20, 2010), slip op. at 2. The appellate court agreed that Gayden's jail time credits had been miscalculated, and remanded for the trial court to award him additional credits, but affirmed the denial of post-conviction relief in all other respects. *Id.* at 5-22. Gayden filed a petition to transfer in the Indiana Supreme Court, which was denied. (DE # 14-4 at 5.) On October 15, 2010, Gayden tendered his federal petition for mailing. In it he asserts that his trial counsel was ineffective on various grounds, and that his appellate counsel was ineffective because he failed to file a reply brief on direct appeal. (DE # 1; *see also* DE # 17, 18.)

3

## II.     ANALYSIS

The respondent argues that the petition is untimely. (DE # 15 at 7-9.) The court agrees. Gayden's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, habeas corpus petitions are subject to a strict one-year statute of limitations, stated as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Gayden's claims do not implicate newly discovered evidence or a newly recognized constitutional right, nor does he claim that a state-created impediment prevented him from filing his federal petition on time. (*See* DE # 1 at 13-14; *see also* DE # 17.) Accordingly, the provisions of 28 U.S.C. § 2244(d)(1)(A) apply. As stated above, the Indiana Court of Appeals affirmed Gayden's conviction on February 10, 2004. *Gayden*, No. 27A02-0309-CR-827, slip op. at 1. He did not seek transfer to the Indiana Supreme Court, and the time for seeking such review expired on March 11, 2004. *See* IND. R. APP. P. 57(C) (petition to transfer must be filed within 30 days of the appellate court's judgment). The respondent asserts that Gayden's conviction became final on that date. (*See* DE # 15 at 8.)

The court is cognizant that there is some apparent uncertainty in this Circuit on the issue of when a conviction becomes final in cases where, as here, the petitioner fails to complete the state appeals process. In *Farmer v. Litscher*, 303 F.3d 840, 845-46 (7th Cir. 2002), the U.S. Court of Appeals for the Seventh Circuit concluded without analysis that because a habeas petitioner did not pursue a direct appeal in state court, his conviction became final when the time for seeking direct review in the state court of appeals expired. Three years later, in *Balsewicz v. Kingston*, 425 F.3d 1029, 1032 (7th Cir. 2005), the Circuit stated that when a petitioner did not seek discretionary review in the state supreme court, his conviction became final 90 days after the state

5

appellate court's judgment, to account for the time during which he could seek certiorari review in the U.S. Supreme Court. The *Balsewicz* court did not offer any analysis on this issue, nor did it mention *Farmer;* instead the court cited *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002), which stands for the unremarkable proposition that when a petitioner does not seek review in the U.S. Supreme Court, his conviction becomes final 90 days after the state supreme court denies review. *Anderson* did not address the situation presented when the petitioner did not seek review in the state supreme court.[1] Moreover, the Circuit's statement in *Balsewicz* was dicta, since the 90 days was not critical to the calculation of timeliness. *See Balsewicz*, 425 F.3d at 1032. Because the petitioner's conviction became final prior to the adoption of AEDPA, he had one year from the date of the statute's enactment, rather than one year from the date his conviction became final, to seek federal habeas relief. *See id.*

Other Circuits that have analyzed this issue directly have determined that when the petitioner fails to seek review in the state supreme court, his conviction becomes

---

[1] In fact, language in *Anderson* suggests that the decision is premised on the petitioner having completed the direct appeals process in state court. *See Anderson*, 281 F.3d at 675 ("Accordingly, the statute of limitations imposed by section 2244(d)(1)(A) begins to run (i) *when all direct criminal appeals in the state system are concluded*, followed by either completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) when, if certiorari was not sought, *all direct criminal appeals in the state system are concluded*, followed by the expiration of the time allotted for filing a petition for writ.") (emphasis added).

final when the time for seeking review in the state court expires, not 90 days later.²

*See, e.g., Riddle v. Kemna*, 523 F.3d 850, 853-55 (8th Cir. 2008) (en banc); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007); *Pugh v. Smith*, 465 F.3d 1295, 1299-1300 (11th Cir. 2006); *Roberts v. Cockrell*, 319 F.3d 690, 693-94 (5th Cir. 2003). As the Eighth Circuit reasoned, there is no basis for including the 90 days in the calculation since the U.S. Supreme Court has no jurisdiction to review a case appealed directly from the state appellate court. *See Riddle*, 523 F.3d at 855. Because the petitioner has no remedy available in the U.S. Supreme Court when he fails to complete the state appeals process, his conviction becomes final when the time for seeking further review in state court expires. *Id.*

Based on the above, the court concludes that Gayden's conviction became final when the time for seeking review in the Indiana Supreme Court expired on March 11, 2004. Absent any period of tolling, Gayden's federal petition was due one year later on March 11, 2005. Although a properly filed application for state post-conviction relief will toll the limitations period under 28 U.S.C § 2244(d)(2), Gayden did not initiate state post-conviction relief until March 17, 2005, after the federal

---

² Like the *Balsewicz* court, the Fourth Circuit also suggested in dicta that a petitioner's conviction became final after the 90-day period for seeking certiorari in the United States Supreme Court expired, despite the fact that he did not seek an appeal in the state supreme court. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). The Fourth Circuit did not analyze or address the issue in any detail, nor was this point critical to the outcome of the case; instead the court determined that based on a lack of clarity in the petition, the district court was required to give the petitioner notice and an opportunity to respond before dismissing his petition on timeliness grounds. *Id.* at 706-08.

deadline had already expired. Accordingly, he was not entitled to tolling under Section 2244(d)(2) while his state post-conviction petition was pending. *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) (state post-conviction proceeding that did not begin until federal year had expired did not toll the deadline under Section 2244(d)(2)). Therefore, this petition was filed several years too late.

Gayden does not dispute that his petition is untimely, and instead appears to argue that he is entitled to equitable tolling. (DE # 17.) Equitable tolling is a common law doctrine that may be applied to excuse an untimely filing if the petitioner can establish that he pursued his rights diligently but was unable to file on time due to some extraordinary circumstance that stood in his way. *Holland v. Florida*, 555 U.S.—, 130 S. Ct. 2549, 2562 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is reserved for truly extraordinary circumstances and is sparingly granted. *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008).

Here, Gayden argues that he is entitled to tolling due to his *pro se* status and his lack of knowledge of the applicable law. (DE # 17.) These asserted reasons do not constitute the type of extraordinary circumstances that would warrant equitable tolling. *See Tucker*, 538 F.3d at 735 (prisoner's limited legal resources and lack of knowledge of the law did not warrant equitable tolling); *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (lack of knowledge of the law did not warrant tolling); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) (mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting tolling). Because the

8

petition was not timely filed and there is no basis for tolling, the petition must be dismissed.

Pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, the court must consider whether to grant Gayden a certificate of appealability. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the court dismisses a petition on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, the petitioner must show that reasonable jurists would find it debatable whether the court was correct in its procedural ruling. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it debatable whether the petition states a valid claim for denial of a constitutional right. *Id.* To obtain a certificate of appealability, the petitioner must satisfy both components. *Id.* at 485.

As is fully explained above, Gayden's petition was not timely filed. Gayden has not established that jurists of reason would debate the correctness of this procedural ruling or find a reason to encourage him to proceed further. Assuming Gayden could satisfy the first prong by showing that the court's procedural ruling is debatable, he would fail on the second prong. For the reasons fully articulated in the respondent's

9

brief, the court agrees that Gayden has failed to show that the state courts unreasonably adjudicated his ineffective assistance of trial counsel claims. (*See* DE # 15 at 13-17.) Gayden's ineffective assistance of appellate counsel claim is barred by procedural default because he did not raise this claim on post-conviction review. (*See* DE # 14-5 at 3-4.) Accordingly, the court declines to issue Gayden a certificate of appealability.

For these reasons, the court **DISMISSES** the petition (DE # 1) as untimely and **DECLINES** to issue a certificate of appealability.

**SO ORDERED**.

Date: April 20, 2011

 s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT